## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

MOUNT ZION MINISTRIES CHURCH, )
INC., doing business as REDEEMER )
CHURCH, a New York not-for-profit and )
religious corporation, )
                                           )
       Plaintiff, )   Case No. 6:20-cv- 102 (BKS/TWD)
                                           )
       v. )
                                           )
TOWN OF WHITESTOWN, NEW YORK )
a New York municipal corporation, )
                                           )
       Defendant. )

## PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND JURY DEMAND

       Plaintiff, Mount Zion Ministries Church Inc. (doing business as Redeemer Church and referred to hereafter as the "Church"), by and through its counsel, and for its Verified Complaint against Defendant, Town of Whitestown, New York (hereinafter, "Whitestown"), under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), states as follows:

### NATURE OF THE CASE

       1.      On its face, § 200-16 of Whitestown's Zoning Code treats religious assembly uses on less than equal terms with nonreligious assembly uses in violation RLUIPA's "Equal Terms" provision, 42 U.S.C. § 2000cc(b)(1). According to § 200-16, nonreligious assembly uses, like private clubs or lodges, indoor recreation centers, and government buildings (e.g. a municipal townhall) are permitted in the M-1 district subject to site plan approval, but religious assembly uses (e.g. a church or mosque) are prohibited. Because the unequal terms of § 200-16 inhibit the

Church's religious exercise on its property, which lies in an M-1 district, this action seeks immediate injunctive and declaratory relief from § 200-16 and its enforcement.

## PARTIES

2. The Church is organized as a New York not-for-profit religious corporation and owns property in Whitestown at 8170 Halsey Road, Parcel SBL 316.000-1-58.1 and 58.2 (the "Property").

3. Defendant Whitestown is a town located in Oneida County, New York.

## JURISDICTION AND VENUE

4. This action arises under RLUIPA, 42 U.S.C. 2000cc et seq., and this Court has jurisdiction over the subject matter of this action by virtue of 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201 (declaratory relief); and 18 U.S.C. § 2202 (injunctive relief).

5. Venue in this action is proper within this District pursuant to 28 U.S.C. § 1391(b), in that Defendant is situated within this judicial district, Plaintiff is located within this judicial district, all of the events giving rise to the claims asserted by Plaintiff occurred in this judicial district, and the property that is the subject of the action is situated in this judicial district.

6. This Court has personal jurisdiction over Defendant as a town in the State of New York.

## FACTUAL ALLEGATIONS

### *The Church and the Property*

7. The Church is a faith-based community comprised of one church led by staff that currently meets in five locations or campuses; Utica (two campuses), Rome, Albany, and Syracuse.

8. The Church has sincerely held religious beliefs that compel it to establish local campuses that serve the local communities in which they are established. The Church's religious

2

mission is to help people from all walks of life pursue and experience a transformational relationship with Jesus and each other.

9. On January 8, 2020 the Church acquired title to the Property, which consists of two parcels of vacant land.

10. The Church now seeks to convert and use the Property for religious assembly in accordance with its sincerely held religious beliefs and its religious mission.

11. RLIUPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that the "*use, building, or conversion* of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses *or intends to use the property for that purpose.*" 42 U.S.C. § 2000cc-5(7) (emphasis added).

12. Congress also mandated that RLUIPA is to be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

### *Whitestown's Land Use Regulations*

13. On or around September 18, 2019, the Property was rezoned from "JR Judd Road Corridor Overlay District" to an "M-1 Manufacturing District." See **Exhibit A**, September 18, 2019 Whitestown Resolution.

14. Section 200-16 of the Zoning Code governs which uses are permitted in an M-1 zoning district and states, "[t]his district provides for limited industrial uses outside the industrial park." See Group **Exhibit B**, containing all relevant excerpts of Whitestown's Zoning Code, at § 200-16.

15. Irrespective of § 200-16's purpose statement quoted above, numerous non-industrial uses are permitted in the M-1 district.

16. Pursuant to § 200-16(A), certain uses are permitted in an M-1 district, subject to site plan approval. Id.

17. Those uses are referred to as "site plan review uses" and include all "[u]ses permitted in the C-4 Commercial District, but not including any dwelling, school, hospital or similar institution for human care except when incidental to a permitted use." Id. at § 200-16(A)(1).

18. The specific uses permitted in the C-4 Commercial District are set forth in § 200-15 and include those "uses permitted in the C-3 Retail Commercial District." Id. at § 200-15(A)(1).

19. The uses permitted in the C-3 Retail Commercial District are set forth in § 200-14 and in turn include "C-1 and C-2 Commercial Uses." Id. at § 200-14(A)(1).

20. As a result of this cumulative zoning scheme, the following nonreligious assembly uses are allowed as "site plan review uses" in an M-1 district:

   a. Government offices (§ 200-13(A)(4));

   b. Private club or lodge (§ 200-14(A)(7)); and

   c. Recreation, commercial; indoor and outdoor (§ 200-15(A)(5)).

21. While the Zoning Code does not define government offices (a term which usually includes municipal buildings and townhalls), it does define "CLUB, PRIVATE" to mean, "[a] building or use catering exclusively to club members and their guests for social and/or recreational purposes and not operated primarily for profit." Id. at § 200-3.

22. The Zoning Code also defines "RECREATIONAL, COMMERCIAL INDOOR" as including "such uses as bowling alley, theater, table tennis and pool hall, skating rink, curling,

4

gymnasium, swimming pool, hobby workshop, and similar places of indoor commercial recreation. Id. at § 200-3.

23. Despite the fact that all of the aforementioned nonreligious assembly uses are permitted in the M-1 district, religious assembly uses are not identified as a permitted use in the M-1 district and are therefore prohibited.

24. On or around July 3, 2019, Whitestown's Zoning Enforcement Officer, Tyler Tormey, confirmed in writing that "church" and "religious worship service" are not permitted uses in an M-1 zoning district. See **Exhibit C**, July 3, 2019 Email.

25. On its face, Whitestown's Zoning Code allows people in an M-1 district to assemble for political, social, recreational, and not-for-profit purposes, but at the same time prohibits people from assembling for religious purposes.

## COUNT I
### VIOLATION OF RLUIPA, 42 U.S.C. § 2000cc(b)(1)
### EQUAL TERMS PROVISION

26. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if each was fully restated herein.

27. Congress enacted RLUIPA in order to provide "very broad protection for religious liberty." Holt v. Hobbs, 574 U.S. 352 (2015).

28. The Equal Terms provision of RLUIPA states: "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

29. Under RLUIPA's Equal Terms provision, Whitestown is prohibited from treating a religious assembly use less favorably than a nonreligious assembly use.

30. RLUIPA "is less concerned with whether formal differences may be found between religious and non-religious institutions—they almost always can—than with whether, in practical

5

terms, secular and religious institutions are treated equally." *Third Church of Christ, Scientist v. City of N.Y.*, 626 F.3d 667 (2d Cir. 2010).

31. Determining whether a religious assembly is treated "on less than equal terms," necessitates a comparison of how a municipality treats a nonreligious or secular assembly use in the same zoning district. *Id.* at 670.

32. To that end, through § 200-16 of its Zoning Code, the Town of Whitestown has implemented a land use regulation that expressly permits the following nonreligious assembly uses to locate within M-1 districts subject to site plan approval: clubs, lodges, indoor recreation centers, and government buildings (i.e., townhalls or municipal buildings).

33. RLUIPA's legislative history specifically identifies clubs, lodges, municipal buildings, and recreation centers as comparable nonreligious assembly uses with which religious assemblies should be treated equally. H. REP. 106-219 at 19 (July 1, 1999).

34. While nonreligious assembly uses are allowed in the M-1 district, religious assembly uses are not identified as an allowable use in the M-1 district.

35. By permitting various nonreligious assembly uses in the M-1 district but denying the same right to religious assembly uses, Whitestown has implemented a land use regulation in § 200-16 that facially treats religious assemblies less favorably than nonreligious assemblies.

36. Accordingly, Whitestown's less favorable treatment of religious assemblies violates RLUIPA's Equal Terms provision.

37. As a direct result of the unequal terms of § 200-16, which violate the Church's rights under RLUIPA's Equal Terms provision, the Church is suffering irreparable harm to its religious exercise, namely its intended use and conversion of the Property for religious assembly, for which there is no adequate remedy at law.

38. The Church will continue to suffer irreparable damage to the very core of its federally secured freedom if Whitestown is not preliminarily and permanently enjoined from enforcing § 200-16 of its Zoning Code to prohibit the Church from converting and using the Property for religious assembly.

## PRAYER FOR RELIEF

**WHEREFORE**, the Church prays for a judgment against Defendant Whitestown, and respectfully requests that this Honorable Court grant it relief as follows:

   a. Declare that Whitestown's Zoning Code facially violates the Equal Terms provision of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc(b)(1);

   b. Preliminarily and permanently enjoin Whitestown, its officers, agents, employees, attorneys, and all other persons acting in concert with it from enforcing § 200-16 of its Zoning Code to prevent, or attempt to prevent, the Church from converting or using the Property for religious assembly;

   c. Nominal and compensatory damages; and

   d. Grant such other and further relief, as the Court deems equitable, just and proper.

## Demand for Trial by Jury

Plaintiff herein demands a trial by jury in this cause of action.

Respectfully Submitted,

**Dalton & Tomich PLC**

By: *[signature]*

Daniel P. Dalton (MI Bar No. 44056)
Noel W. Sterett (Illinois Bar No. 6292008)
Alexander R. Reuter (MI Bar No. 80654)
Lead Attorneys for Plaintiff
*Pro Hac Vice* admissions pending
The Chrysler House, 719 Griswold Street,
Suite 270, Detroit, MI 48226
Tel. (313) 869-6000
ddalton@daltontomich.com
nsterett@daltontomich.com
areuter@daltontomich.com

Dated: JAN. 29, 2020

and

Local counsel

**Philip J. Vecchio, P.C.**

By: *[signature]* Vecchio, Esq. PC

Philip J. Vecchio, Esq.
Attorney for Plaintiff
24 Huntswood Lane
East Greenbush, N.Y. 12061
pvecchio@nycap.rr.com
Telephone (518) 857 – 2897
Facsimile (518) 479 – 4335
Federal Bar No. 505274

Dated: January 30, 2020

8

## VERIFICATION OF COMPLAINT

Pursuant to 28 U.S.C. §1746, I, Pastor Mike Hughes of Mount Zion Ministries Church, Inc., d.b.a. Redeemer Church, declare under penalty of perjury, that I have read and have personal knowledge of the matters contained in this Verified Complaint and that the allegations contained therein are true and accurate.

Executed this __28th__ day of ___January___ 2020

_Pastor Mike Hughes_
By: Pastor Mike Hughes